Sanders et al vs. Reister.

## SANDERS ET AL V. REISTER.

*1. HUSBAND AND WIFE:* CO-PLAINTIFF: COMPETENT WITNESSES. Under the provisions of the Code of Civil Procedure, husband and wife, when joined as co-plaintiffs or co-defendants, are competent witnesses to testify in their own behalf, and the fact that the evidence of one may incidentally benefit the other, is no valid objection.

*2.* ——: ——: ——. The rule that permits husband and wife, when joined, to testify in their own behalf, cannot be extended to authorize or permit one to testify against the other, excepted in cases provided by statute.

*3. EVIDENCE:* EXPRESSIONS OF PAIN: INJURY. Wherever the bodily or mental feelings of an individual, are material to be proved, in case of injury, the usual expressions of such feelings, pain and suffering, are original and competent evidence.

*4.* ——: ——: ——. The common complaints of pain and distress, as the natural concomitants of illness and physical injury, are regarded as verbal acts, and proof of them is as competent as any other testimony when relevant to the issue.

*5. TRESPASS:* NEGLIGENCE: DAMAGES. The mere fact that the plaintiff, when she suffered the injury, was technically trespassing on the defendant's land, does not deprive her of all remedy for defendant's negligence, if her trespass did not involve negligence on her own part contributing to her injury.

*6. HIGHWAY:* EXCAVATIONS: PROTECTION. A person opening near a public way a deep and dangerous excavation, is bound to place some guard or protection around it, if it is sufficiently near such public way to make it probable that persons traveling thereon might be injured. And whether the excavation is deep and dangerous, and in dangerous proximity to the public way, are questions for the jury.

*7.* ——: ——: ——. The obstructions or nuisances need not be directly in the road—it is enough if they are so close to it as to make traveling thereon dangerous; and the true and proper test of legal liability is whether the excavation be substantially adjoining the way.

8. *NEGLIGENCE:* CONTRIBUTORY: ONUS PROBANDI. Negligence on part of plaintiff is a mere matter of defense to be established affirmatively by the defendant, by a preponderance of the evidence, though it may be inferred from the circumstances proved by the plaintiff.

9. ———: ———: ———. The plaintiff may establish the negligence of the defendant, his own injury in consequence thereof, and his case is made out; if there are circumstances that convict him of concurring negligence, the defendant must prove them and thus defeat the action.

## *Appeal from Yankton County District Court.*

This action was brought for the recovery of damages sustained by reason of injuries resulting to plaintiff, Anna Saunders, from a fall into a cellar, alleged to have been dug by defendant, and left unguarded on his lot in the City of Yankton, and in dangerous proximity to the street and alley on which said lot is situated, which sickness resulted in sickness and a miscarriage.

Defendant in his answer, admits the ownership and occupancy of the lot, and the marital relation of plaintiffs. All other material allegations are denied. It is further alleged in the answer that if plaintiff, Anna Sanders, was injured in any way by falling into a cellar on defendant's lot, it was while she was off the public streets and alleys of the city, and upon the property of defendant, and while she herself was guilty of carelessness and negligence, and that defendant had dug no cellar except such as he lawfully might upon his own premises, and with sufficient notice to plaintiff and the public, and with sufficient guard and protection.

During the progress of the trial, plaintiffs called as a witness, plaintiff Anna Sanders, the wife of her co-plaintiff, and offered to prove by her the facts and circumstances connected with her falling in the cellar, and her injuries occasioned thereby. Defendant objected to the said Anna Sanders being examined: 1st, in this case at all; 2d, in behalf of her husband, co-plaintiff; and 3d, especially as to any facts not within her exclusive knowledge as agent or otherwise, as being incompetent under the statute, and upon the issues herein, which objections were, by the court, overruled. Defendant excepted and the witness was examined.

Plaintiffs also called as witness, Mrs. Roth, a midwife, Katie Klickner, a house-servant of plaintiffs', and Dr. J. B. Van-Velsor, a practicing physician, and proposed to prove by them, among other things, the statements made to them by Anna Sanders on the morning after the alleged injury, and on several successive days subsequent thereto, in regard to the state of her health and injuries. To the introduction of this evidence defendant objected, as calling for hearsay testimony, and for the declarations of the plaintiff in the absence of the defendant. The objection was overruled, defendant excepted, and the evidence was admitted.

When plaintiffs had rested, defendant moved the court to non-suit the plaintiffs, and dismiss the action for the following reasons:

1. Defendant has done no act of commission. If anything, it was an act of omission.

2. Defendant did nothing more than he had a lawful right to do, in digging the cellar, and leaving it unguarded.

3. There is no evidence to show that defendant dug the cellar, or caused it to be done.

4. The plaintiff, Anna Sanders, was herself guilty of negligence.

Which motion was overruled by the Court, and defendant excepted.

After defendant had introduced all his testimony, and had rested, plaintiffs produced as a witness, the plaintiff, Charles A. Sanders, for the purpose of rebutting statements made by a witness for the defendant, relating to said witness being a witness in this case. Defendant objected to the introduction of said plaintiff, on the ground that he was the husband of his co-plaintiff, Anna Sanders, was therefore not a competent witness, and because said Anna Sanders had been sworn and testified in the case in chief. Which objection the Court overruled, and allowed said Charles A. Sanders to testify. Defendant excepted, and said witness testified as follows:

"He (Dunlap) said if I did not settle the case I had against him, he would be the biggest witness I would have against me in this case."

Plaintiff Anna Sanders was then recalled by plaintiffs, and defendant objected to her testifying, on the same ground as when she was called in chief, and for the further reason that her husband had been called, and had testified in behalf of plaintiffs. These objections the Court overruled, and allowed her to testify, and defendant excepted.

After the evidence had closed, and both parties had rested, defendant again moved that a non-suit be entered against the plaintiffs, on all the evidence, which motion the Court overruled.

Defendant asked the Court to give to the jury the following instructions, which were refused:

1. If the jury believe from the evidence that the defendant dug the cellar in question on his own lot, and far enough from the line of the street and alley so that in passing along said street or alley, said plaintiff, Anna Sanders, could not have fallen into said cellar, and the jury further believe from the evidence that if said plaintiff fell into the cellar it was while she was upon the lot of defendant, and was there without any permission or invitation of said defendant, and not in pursuit of any lawful business, so as to give her a right to be there, the plaintiffs cannot recover in this action, unless the jury further find that said cellar was intentionally left unguarded, or the defendant was guilty of gross negligence.

2. If the jury believe from the evidence that the street and alley bordering upon defendant's lot, where this cellar was dug, were entirely clear and unobstructed, and the plaintiff, upon the evening in question, while going from her house to the house of Mrs. Roth, left said street, and either voluntarily or accidentally went upon the lot of defendant without his knowledge or consent, and not in the pursuit of any lawful business, and while on said lot, fell into the said cellar, the plaintiffs cannot recover in this action, unless the jury shall believe from the evidence that said cellar was purposely left unguarded, or the defendant was guilty of gross negligence in not properly guarding said cellar.

3. If the jury believe from the evidence that the plaintiff, Anna Sanders, fell into the cellar thereon, while she was upon

the lot of defendant, described in the complaint, and the jury believe from the evidence that she was at the time upon such lot without defendant's permission, or without the permission of some person authorized to grant it, and that she could have pursued her journey without the necessity of going upon said lot, and the jury further believe from the evidence that defendant had no intention of injuring the plaintiff, or any other person, by leaving the cellar unguarded, and was not by so doing guilty of gross negligence, then plaintiff cannot recover and the jury should find a verdict for defendant.

4. The jury are instructed that to entitle the plaintiffs to recover in this action, the jury must find that the defendant, in leaving the cellar unguarded, did not exercise ordinary care or skill: that is to say, that he did not in so doing, do what men of ordinary prudence would do under like circumstances. Therefore, if the jury believe from the evidence that the defendant, Michael Reister, did only what men of ordinary prudence and discretion generally do under like circumstances, and did not neglect to do anything in relation to guarding the cellar which men of ordinary prudence and care would have done under the same circumstances, then the verdict must be for the defendant.

5. The burden of proof is upon the plaintiff to show the negligence of the defendant, and if the jury shall believe that the evidence adduced before them evenly balances upon the question of negligence of the defendant, and does not preponderate in favor of the plaintiffs, then the verdict should be for the defendant.

6. The plaintiff cannot recover in this action if the jury believe from the evidence that the plaintiff, Anna Sanders, by the want of ordinary care, incurred the risk of the injury of which she complains.

7. If the jury believe that the plaintiff, Anna Sanders, in going from her house to Mrs. Roth's in the night time, and under circumstances to which she has testified, did not exercise ordinary care, and thereby incurred the risk of the injury which she complains to have suffered, then these plaintiffs cannot recover, and your verdict should be for the defendant.

The Court (BENNETT, J., presiding) delivered to the jury the following instructions, to all of which, with the exception of the 5th, defendant excepted:

"3. Defendant having been, as admitted by the answer, the owner and occupant of the lot at the time of the injuries complained of, the law presumes that whatever hole or cellar may have been dug on the lot, was so dug by him, or by his direction, or remained there with his knowledge or consent.

4. It is incumbent on the plaintiff to prove, 1st, the existence of the hole or cellar on said lot; 2d, that it was deep and dangerous; 3d, that it was so near a public street or alley as to be dangerous under ordinary circumstances to persons passing upon the street or alley, and using ordinary care to keep upon the proper path; 4th, that defendant took no reasonable precautions to prevent injuries happening therefrom to such persons passing by; 5th, that the plaintiff, Anna Sanders, in passing along the street or alley, using ordinary care, fell into such hole or cellar and was injured.

5. The negligence of the defendant being the gist of the action, the burden of proof rests with plaintiffs to establish it; and if they fail on this point, they cannot recover, it matters not how seriously the plaintiff, Anna, may have been injured; the fact of the injury raises no presumption of negligence on the part of defendant, but such negligence must be proven.

6. Negligence is more nearly synonymous with carelessness, than with any other word. It signifies primarily the want of care, attention, diligence, skill or discretion in the performance of an act by one having no positive intention to injure the person complaining thereof, and is a violation of the obligation which enjoins care and caution in what we do, and whatever may be its grade, there is no purpose to do a wrongful act, or to omit the performance of a duty. It is an absence of proper attention, care or skill, and is strictly nonfeasance—not malfeasance. But, of course, the fact that the injury caused was unintentional, is no excuse.

7. But if you find that plaintiff was injured as alleged in the complaint, and that defendant was chargeable with some

degree of negligence, before you can find for plaintiffs you must also find that the party injured, Anna Sanders, was entirely free from any negligence which contributed to the injury —that is of any negligence without which the injury would not have happened.   And this negligence on the part of the person injured must be strictly confined to the immediate causes and circumstances of the injury complained of, and must not be remote or indirect.   It may be said if plaintiff had not been on the street in a dark night she would not have been injured.   But persons have the right to be upon the street and alleys of the city even at night and even though the night be dark and stormy, and courts will not stop to inquire into the necessity or business that required them to be there, or ordinarily, as to whether prudence might not have required them to remain at home; and persons so going upon the streets and alleys of a city have the right to expect that such streets and alleys are in a safe condition, so far as being free from dangerous excavations or obstructions in the immediate street or alley, or in dangerous proximity thereto.

8.   The degree of care and prudence required to be exercised by plaintiff depends on the probabilities of danger or the risk incurred.   Greater care and vigilance is required of a person in crossing a railroad track or in places of peril, than in a public street, where ordinarily the traveler has a right to expect a safe and unobstructed way, and the degree of care and diligence to which the plaintiff, Anna, must be held is that of ordinary care and diligence under the circumstances in which she was placed; and if you find that she did not exercise such care and diligence, then she was guilty of negligence.   But the jury will bear in mind that this applies to the immediate causes and circumstances of the injury complained of, and to nothing else.

9.   Negligence on the part of plaintiff is a mere matter of defense to be proved affirmatively by the defendant of which you must be satisfied by a preponderance of the evidence, though it may, of course, be inferred from the circumstances proved by the plaintiffs.   The law will not presume contributory negligence on part of plaintiffs.

VOL. I.—22.

10.   If you find that the excavation on defendant's lot was deep and dangerous, and in dangerous proximity to the street or alley, it was then the imperative duty of the defendant to protect the traveling public or persons passing to and fro on the street or alley against danger, injury or accident therefrom, and this without reference to what others may do or might have done under similar circumstances, and without reference to the cost or trouble in providing such protection.

11.   What would be held negligence in a thickly populated city, where many persons are passing and repassing by night and by day, might not be negligence in the country visited by few, strangers to the danger, and seldom after night fall; and in determining the question of negligence on part of defendant, you are to consider the probable danger of persons being injured by reason of the excavation not being protected, or the insufficiency of any protection that may have been placed around it.

12.   Whether this excavation was in dangerous proximity to the street or alley, is a question for you to determine from the evidence, and all the circumstances.   As has already been stated, persons have an undisputed right to be upon the street or alley and upon every part of them up to the very line, and where there is nothing to define the line they are not held to an accurate knowledge of it.   And an excavation made near to a street or alley, though not dangerous to one keeping strictly in the street or alley, yet if so near that a person deviating a little therefrom, is in danger of falling in, it is in dangerous proximity.   The location of the excavation and the probable danger of persons falling therein, either during the day or in the darkness of the night, are to be considered by you in determining this question.

13.   You are also to determine from the evidence whether this excavation, if you find one existed on the lot of defendant, was deep and dangerous, and for this purpose you will consider the probability of injury from a fall therein, or whether a person would likely be injured from such a fall, and if you find that Anna Sanders was actually injured from falling in this excavation, it is evidence tending to prove its

dangerous character.   No particular depth is essential; persons are sometimes injured by an unexpected step downwards of even a short distance.

14.   Defendant had an unquestioned right to dig a cellar on his own lot, and near to the street or alley, but if so near as to be dangerous, he has no right to leave it unprotected or unguarded.   And it matters not how many there may be in the city in that condition, the negligence of others will not excuse him.

15.   If you find from all the evidence that plaintiffs are entitled to recover, then nothing remains for you to do but assess the amount of recovery.   And in assessing the damages you will take into consideration the pecuniary loss, if any proven, the bodily and mental pain and suffering of the plaintiff, Anna, both past and future, if you find from the evidence that it is reasonably certain that future pain and suffering are inevitable.   But future damages should only be awarded in case the evidence renders it reasonably certain that such damages will inevitably and necessarily result from the original injury, and after a careful examination of all the evidence, award to plaintiffs such sum, not exceeding the amount claimed, as will be a just and reasonable compensation for the actual injuries sustained, or that may be sustained, as above explained."

Verdict for plaintiffs.   Motion by defendant to set aside the verdict and for a new trial, overruled, and judgment on the verdict.

*Moody & Cramer*, for appellant.

Anna Sanders, the wife, was an incompetent witness to testify to any matter not within her exclusive knowledge as agent or otherwise.

Certainly it was error to allow both to testify.   (Code of Civil Procedure, laws of 1867–8, chap. VII, page 103.)

If that chapter was not in existence, and we were governed by the common law, neither party could testify.   That statute changes the common law, and adopts a general rule, allowing

all to testify, and then puts a proviso thereto, applying to husbands and wives testifying for or against each other, which excepts that class of witnesses from this new rule, and leaves the common law in force as to them, unless the facts to be sworn to are in the exclusive knowledge of the one offered as a witness, as agent, or in some similar capacity, and then allows but one to testify.     (5 Seld. N. Y., 153–160; 22 Ohio St., 527–532; 10 Ohio St., 429; Green'l Ev., §§ 334–342; *Pillon and wife v. Bushnell*, 4 How. Pr., 9; *Karney v. Paisely*, 13 Iowa, 89; 14 Iowa, 365; *Mann v. Marsh*, 21 How. Pr., 374; 13 Peters, 223.)

The plaintiff, Anna Sanders, having been allowed to testify, her declarations made out of court to her attendants, and especially to the domestic Kitty Klickner, were incompetent. There was no longer a necessity for this rule of evidence, and it being based wholly upon necessity—that being the reason of the rule—and the reason failing, the rule should cease. (45 N. Y., 574, *Reed v. Cent. R. R.*; 23 Wend., 50, *Robb v. Hickley;* § 1965, Civil Code.)

The complaint against the defendant in this case is not for any act of commission or affirmative misfeasance, but for an omission to perform what was claimed to be a *legal duty*, which he owed to the plaintiff, the failure to perform which resulted without her fault in her injury.   It is certainly essential then, to a recovery, that the plaintiffs establish that the defendant owed at that time, some specific, clear legal duty to the party injured.

We are therefore to inquire: what were the relative legal rights of Anna Sanders to party injured, and the defendant, in respect to the *locus in quo?*

If she was upon the defendant's premises without authority of law, without his permission, invitation or license, and without necessity;—in other words, was there as a trespasser, as claimed by defendant—he owed her no legal duty to guard her against falling into a cellar which he was lawfully digging upon his own lands.    And he had a right to have this view of the case, based, as it was, upon the evidence put before the jury, and we submit it was obvious error to refuse the instructions asked for by him.    (*Nicholson v. Erie R. R.*, 41 N.

Y., 526; *Hartfield v. Roper*, 21 Wend., 615; Cent. Law Journal March 12, 1875; *Munger v. Tonawanda R. R.*, 5 Denio, 255, and 4 N. Y., 349; *Bush v. Brainard*, 1 Cow., 78; *Howland v. Vincent*, 10 Metc., (Mass.) 371; 15 American, 119.)

The charge of the learned Judge who presided at the trial, when taken as a whole, left the jury very little to do except to assess the damages. Its effect, we respectfully submit, was clearly this: The defendant, admitting in his answer that he was the owner and occupant of the lot upon which the hole or cellar was located, the jury are to presume as a matter of law, (which of course cannot be contradicted by any evidence) that the hole or cellar was dug by him and remained there with his knowledge and consent. That the plaintiff, Anna Sanders, had an undoubted right (and if so it therefore was not carelessness in her) to go wandering about in her then condition on that very dark and stormy night, and to go off the public streets and alleys and on to the defendant's land, so that she tried to keep on the street, and if while she was off from the street and alley she fell into a deep and dangerous hole or cellar which was upon defendant's lot and ungarded, and was injured, defendant was liable. And that a deep and dangerous hole might be only a step down, and the fact of her falling in and being injured was presumptive evidence that it was deep and dangerous.

If there is anything left for the jury, but to assess the damages, I think a jury would hardly be able to determine what it was.

We submit there are no such presumptions of law, arising from ownership or occupancy. If it is a presumption of *law* it cannot be rebutted and, therefore, a man may be made liable for the willful and malicious act of a stranger to him, done without his knowledge, consent or connivance. Nor do any such rights appertain to a party walking the streets. If by reason of some impediment put upon the streets by the defendant the party is compelled to leave it, and then while off the street and on defendant's land, is so injured, he might have a right of recovery, being without fault.

The 9th instruction given, puts the burden of proof to show

negligence on the part of the plaintiff upon the defendant. This must be error.

Two elements must combine to entitle a plaintiff to recover in such an action. The defendant must have been negligent and the plaintiff without fault. The last is an essential averment in the complaint and must be affirmatively shown by the plaintiff, or appear from the facts and circumstances shown by him. How then can the burden of proof be upon the defendant and he be required to show it by a preponderance of the evidence as in such instruction given. (*Warner v. Cent. R. R.*, 44 N. Y., 470–1; *Ernst v. Hudson R. R.*, 24 How Pr., 97 and 103; 3 American, 390, *Murphy and wife v. Dean.*) The measure of damages as laid down in the 15th instruction given is improper. The *pecuniary loss* is recoverable in a suit by the husband *alone*. The doctor bills are paid by him and he is entitled to recover for loss of her services, unless in case she is conducting business for herself, and then she would be the proper and the only party entitled to maintain the action therefor, alleging the requisite facts. In no case could such damages be recoverable in suit brought by both. (24 Wis., 621, *Kavanaugh v. Janesville*; 2 Seld., 407, *Thomas v. Winchester*; 49 N. Y., 55, *Filer v. Cent. R. R.*)

*S. L. Spink* and *S. H. Gruber*, for appellee.

Husband and wife must be joined. (Laws of 1867–8, page 18, § 67.) Where the husband and wife are both parties to the suit either one may testify. (*Tingley v. Cowgill*, 48 Mo., 291–6; *Bennifield v. Hypress*, 38 Ind., 498; *Birdsell v. Dunn*, 16 Wis., 250 and 496; *Maverick v. 8th Ave. R. R. Co.*, 36 N. Y., 378; *Lugate v. Pierce*, 49 Mo., 441; *Harman v. Stowe*, 57 Mo., 93.) In trespass for injuries to the person complaints and representatives of the suffering party indicative of present pain and natural symptoms, whether made before or after the suit, may be received as original evidence. (*Towles v. Blake*, 48 N. H., 92; *Taylor v. Grand Trunk R. R. Co.*, 48 N. H., 304; *People v. Vernon*, 35 Cal., 49, 50, 51; *Ills. Central R. R. Co. v. Sutton*, 42 Ills., 432 and 440; *Gray v. McLaughlin*, 26 Iowa,

279, 28, 281; *Collins v. Waters*, 54 Ills., 485 and 486;. *Monday v. State*, 32, Geo., 672; *Ins. Co. v. Mosby*, 8 Wall, 397; 1 Philips Evidence, 232; 1 Greenleaf Evidence, 117, 118, § 102; *Earl v. Tupper*, 45 Vt., 275.) Where one person is injured through the negligent omission or act of another he is entitled to recover not merely pecuniary loss but also compensation for his bodily pains and sufferings, and this though the negligence was not gross for they are not vindictive damages. (*Morse v. Auburn & Syracuse R. R. Co.*, 10 Barb., 621; *Ransom v. The N. Y. & Erie R. R. Co.*, 15 N. Y., 415.) Plaintiffs' condition and circumstances, and the probable future duration and future effects of the injury, are to be taken into consideration by the jury in assessing damages. (*Curtis v. Rochester & Syracuse R. R. Co.*, 18 N. Y., 334; 15 N. Y., as above; *Jared D. Matteson, Resp. v. The N. Y. Cent. R. R. Co.*, 35 N. Y., 487; *Towle v. Blake*, 48 N. H., 95 and 96; Sedgwick on Damages, 123, § 109; Sedgwick on Damages, 94, note 1; 2 Dillon Circuit Court Reports, 268.) Bodily and mental suffering should be taken into consideration. (15 N. Y., 415; *Marsten v. Warren*, 27 Conn., 293; *Smith v. Derby*, 30 Geo., 241.) Where one does a legal act in such a careless way that injury to third persons may probably ensue, he is answerable in some form of action for all results of such acts. (Hilliard on Torts, Vol. 1, § 89; also pages 575 and 577.) The general rule is stated to be that it is of no consequence whether defendant intended the injury or not. In civil actions the law does not so much regard the intent of the actor as the loss or damage of the injured person. (Hilliard on Torts, 95, § 15, and note; ibid, 96.) A person making an excavation adjoining a public way, though it could not be dangerous to one who kept strictly in the road, is yet liable to one who accidentally deviated a little from the road and fell into the excavation. (Sherman and Redfield on Negligence, §§ 505, 399, 391, and notes 415 and 505.)

BENNETT, J.—I cannot, without extending this opinion beyond all reasonable limits, be expected to examine in detail every objection raised by appellant on the trial below, that is brought up by the record; or the correctness of the legal

propositions embraced in each separate instruction given and refused, and shall notice them only so far as they relate to, and bear upon the points made in appellant's brief. This further appears as evidently sufficient from the consideration that the propositions discussed by counsel for appellant are primary and fundamental, and not merely technical in their character.

I.   In examining the points in the order of their presentation, we are met at the threshhold with the question as to the competency of husband and wife as witnesses in a cause wherein they are joined as co-plaintiffs.

The difficulties involved in this question grow out of our rather crude legislative innovations upon the common law, whereby we have attempted to sweep away a portion of the old land marks, and retain a portion, leaving our system in this respect, more or less imperfect, uncertain and contradictory.

The old rule—hoary with time, and the wisdom of which, it was supposed, had been proven by the experience of ages—that no party to a suit, and no one having a pecuniary interest in its result, could be a competent witness, has given away before modern legislation. But the legislative power has almost invariably attempted to shield the marital relations from the effect of these sweeping enactments; to what extent they have succeeded is, I confess, a vexed question of construction. This class of legislation, being comparatively recent, there are many questions arising out of it, for the solution of which, we find but few lights to guide us. Sections 319 and 320 of our Code of Civil Procedure read as follows:

" No person offered as a witness shall be excluded by reason of his interest in the event of the suit."

" A party to an action or special proceeding, including proceedings in probate courts and proceedings for the summary recovery of the possession of land, may be examined as a witness on his own behalf, or in behalf of any other party, in the same manner, and subject to the same rules of examination, as any other witness."

If these provisions stood alone, there could be but little doubt as to their meaning or proper construction. Interest, of whatever nature or extent, would no longer render incompetent, not even excepting the close, intimate and inseparable identity of interest existing between husband and wife. And all parties regardless of their relations to the suit or to other parties thereto, could testify. But we find in the *proviso* that follows, some very material modifications, and limitations, and the one on which appellant grounds his objections is as follows:

· " The husband can, in no case, be a witness for or against the wife, nor the wife for or against the husband, unless the contract or facts to be sworn to, are in the exclusive knowledge of such husband or wife, as agent or otherwise, in which case but one can testify, and unless in a criminal proceeding for a crime committed by one against the other."*

It does not appear, either from the record, or argument of counsel, that either the husband or wife, was introduced for the purpose of testifying, or that either of them did testify, to facts within his or her exclusive knowledge as agent or otherwise. But it is claimed by counsel for appellees, that husband and wife being joined, they should be permitted, as a matter of right, under the statute, to testify, generally, in their own behalf.

We are concerned then, as I understand, only with the con-

*These provisions have been materially changed, by the revision of 1877, (Code of Civil Procedure, section 446) and now read as follows:

" No person offered as a witness in any action or special proceeding, in any court, or before any officer or person having authority to examine witnesses or hear evidence, shall be excluded or excused, by reason of such person's interest in the event of the action or special proceeding; or because such person is a party thereto, or because such person is the husband or wife of a party thereto, or of any person in whose behalf such action or special proceeding is brought, prosecuted, opposed or defended, except as hereinafter provided:

1. A husband cannot be examined for or against his wife without her consent; nor can either, during the marriage or afterwards, be, without the consent of the other, examined as to any communication made by one to the other during the marriage; but this section does not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other."                REPORTER.

struction of the first clause of this provision, which prohibits husband and wife from being witnesses for or against each other.

This is an action in which the law requires that husband and wife shall be joined, the wife could not sue alone, neither could the husband, except to recover for the loss of his wife's services, and the necessary expenses of her sickness, incurred by him. The wife is, therefore, the meritorious party; the injury was inflicted upon her person—damages must be awarded, if at all, for her pain and suffering, bodily and mental. The husband is interested, for in case of a recovery, he may collect and satisfy the judgment, appropriate and use the proceeds.

It is true his interest is contingent upon his marital relation. Should the wife die before judgment, the cause of action will not survive 'to the husband, but if the husband die before judgment the cause of action will survive to the wife.

So intimately connected is each plaintiff with the very subject-matter of the controversy, and so interwoven are all their respective interests in the result of the suit, that to my mind it would be exceedingly difficult to determine just wherein the husband might be testifying for the wife, or the wife for the husband, or wherein each for himself or for herself. Must they, therefore, both be excluded? The statute has made parties to an action competent witnesses, and the law compels husband and wife to be joined in actions of this kind; now can it be that so great an act of injustice was intended, as to close their mouths, and permit their adversary to take the witness stand? But it may be said that one may be permitted to testify. Which one? The statute says " *a party*," without any qualification as to the interest he may have in the suit, it may be a farthing, or it may be all the estate and reputation he has in the world. If we say the wife should testify, because she is the meritorious party, and to whom the cause of action would survive in the event of the husband's death, may we not also say that the husband should because he may reap all the pecuniary benefit.

To illustrate the doubt and confusion that gather around

this question, I need cite but two cases. In *Monsler and wife v. Harding*, 33 Ind., 176, an action brought by Harding against Monsler and wife for slanderous words spoken by the wife, the court say: "The statute excludes the husband and wife as witnesses 'for or against each other,' but does not prohibit each from testifying in his or her own behalf; and when they are united in the same action the evidence of one of them cannot be considered in determining the issues for the other. In this case we all concur in the opinion *that the wife was a competent witness in her own behalf*, and three of the judges unite in the opinion that the husband was also a competent witness for himself." In the case of *Russ and wife v. The Steamer War Eagle*, 14 Iowa, 363, an action brought for damages for injuries sustained by the wife, the court, under a statute similar to that of Indiana, held that *the husband was a competent witness*, but that the wife could not testify, although joined with her husband, in any case, where she would not he competent if he sued alone. Considering the inseparable nature of the interest of husband and wife in this suit, and the difficulty of drawing a dividing line, and confining the testimony of each to their separate issues—for in actions of this character, and I might say in almost all actions sounding in tort, where the husband and wife are joined, the issues of one, are the issues of the other, and the interest of one the interest of the other—I should regard it as, generally, an impossibility to make practical the rule laid down in the Indiana case, supra, " that the evidence of one of them cannot be considered in determining the issues of the other."

It seems clear to my mind that only one of two positions can be tenable, either the husband and wife must both be excluded, or both admitted, to testify where they are joined. Although the question is not free from doubt, I hold that they should both be admitted, as being sustained· by the better reason, less liable to vexatious uncertainties and complications, in accord with the spirit of the statute, and supported by the more recent authorities. (*Tingley et al. v. Cowgill et al*, 48 Mo., 291; *Monsler v. Harding*, 33 Ind., 176; *Bennifield et ux. v. Hypress et ux*, 38 Ind., 498; *Burdsell v. Dunn*, 16 Wis., 251;

*Sugate v. Pierce*, 49 Mo., 441; *Harriman v. Stowe*, 57 Mo., 93 ) In the case of *Maverick and wife v. Eighth Avenue R. R. Co.*, 36 N. Y., 378, an action brought for the recovery of damages for injuries to the wife, Judge Scrugham, in delivering the opinion of the court, discusses this question in the following brief, but clear and comprehensive manner:

" The testimony of the plaintiff, Augustus Maverick, was properly received. The question is not whether he can be a witness for his wife, but whether, being a party, he must be debarred from testifying in his own behalf, because his wife is also a party to the action. If the result of the action could only effect the wife or her separate property, and he was merely a nominal plaintiff, having no pecuniary interest whatever in the result, and he should be offered as a witness, the question as to his inadmissibility on account of his marital relations to the real plaintiff in interest would be presented. * * * But in cases like this before us the husband has a direct pecuniary interest in the result. * * * As the law stood at the time of the injury on account of which this action was brought, and judgment rendered, the husband was entitled to the money which should be recovered in his life time for injuries to the person of his wife; and the necessity for making the wife a party to such action arose from the fact that the damages would survive to the wife, if the husband died before they were recovered. The interest of the husband was direct and immediate, while that of the wife was uncertain and contingent. He had the right as a real party in interest to be examined as a witness in his own behalf, and the circumstances that his wife might be benefitted by his testimony if he should die before recovery, is merely incidental, and would not justify the exclusion of his testimony."

It does not appear, from the reported case, that there was any objection raised as to the wife testifying.

The Supreme Court of Iowa, has reached the same position, but in a different manner. That court holds that the incompetency of either to testify for the other is a personal privilege, which, under their construction of a peculiar statute, may be waived by the one desiring the evidence of the other,

and this is done simply by the husband calling the wife, or the wife the husband, as a witness.

In the State of Ohio, under a statute providing that husband and wife should not be competent witnesses for or against each other, the Supreme Court excluded both when they were joined, while the opposite party could be a witness. (*Robinson et al v. Chadwick*, 22 Ohio St., 527.) This very unjust and inequitable rule, called forth an amendment by the legislature, February 14, 1859, providing that " in actions where the wife, were she a *femme sole*, would be plaintiff or defendant, either the husband or wife may testify, but not both." And on this plain provision of the statute all subsequent decisions of that court, in which the question was involved, have rested.

The legislature of Massachusetts, relieved the courts of that state, from any trouble on the point, by enacting that where husband and wife were parties, they might testify for or against each other.

The case of *Hasbrouck v. Vandervoort*, 5 Seldon, 153, cited by counsel for appellant, was an action brought by the trustee of the wife, and not a case wherein husband and wife were joined, and was decided under the following statute:

" No person offered as a witness shall be excluded by reason of his interest in the event of the action."

" The last section shall not apply to a party to the action, nor to any person for whose immediate benefit it is prosecuted or defended, etc."

The case of *Stein v. Bowman*, 13 Peters, 217, also cited by appellant's counsel, was not an action in which husband and wife were joined, nor even where the wife was called to testify for the husband, but where she was called to *discredit* him; *to prove in fact that he had committed perjury*. And that high tribunal say: " Can the wife, under such circumstances, either voluntarily be permitted, or by force of authority be compelled to state facts in evidence which render infamous the character of her husband. We think most clearly that she cannot be." And I may say, that the reasoning in this case answers the objection that may be urged, that if husband and wife when joined are permitted to testify, the opposite party

Sanders et al vs. Reister.

may compel them to testify one against the other. Such a result by no means follows. They are excluded from testifying for each other on the grounds of interest, and from testifying against each other on the higher and broader grounds of public policy. If they can be compelled or permitted to testify against each other on one thing, why not all, (except to disclose confidential communications made by one to the other) and even to impeach and contradict each other. Incompetency on the ground of interest may be removed, and no perceptible injury result therefrom; but who could forecast the disaster that might follow the abrogation of that wise and wholesome rule, that is founded in public policy—a rule that regards as utterly insignificant the interest which a litigant may have in the result of any suit, when weighed against the sanctity of the marital relations, and the peace and concord that should exist between husband and wife. In the language of the court in the case of *Stein v. Bowman,* supra, " this rule is founded upon the deepest and soundest principles of our nature. Principles which have grown out of those domestic relations, that constitute the basis of civil society, and which are essential to the enjoyment of that confidence which should subsist between those who are connected by the nearest and dearest relations of life. To break down or impair the great principles which protect the sanctities of husband and wife, would be to destroy the best solace of human existence."

An exception to a general statute, should be strictly construed, and when the statute provides that no person shall be incompetent as a witness on the ground of being a party to the suit or in interest, then such person must come clearly within the exception before he can be excluded. The statute plainly prohibits husband and wife from testifying for or against each other, but does not prevent each from testifying for himself or herself; and the circumstance that each might be benefited by the testimony of the other, in actions wherein they are joined, is no good reason for excluding their testimony.

From the very silence of our statute on the subject of husband and wife testifying when they are co-plaintiffs or co-

defendants, we may reasonably presume it was intended they should occupy the same position, with the same right to testify, as other partis to a suit, and there I am content to leave them.

II.  It is insisted by appellant that there was error in admitting evidence of the complaints and declarations of plaintiff, Anna Sanders, made to the witnesses, as to her injuries and sickness.  The argument of counsel is based upon the proposition, that there is no longer a necessity for the rule, under which this evidence was admitted, and it being based wholly upon necessity—that being the reason of the rule—and the reason failing the rule should cease.  The necessity, it is claimed, grew out of the rule of evidence prohibiting a party to a suit, or in interest, from testifying in his own behalf; but this disability being removed by the statute, there is no longer a necessity for giving in evidence the declarations of a party, and therefore the reason of the rule ceases.

The fallacy of this position consists in the alleged reason for the rule.  In one sense, all evidence is received as a matter of necessity, there being no other means by which courts and juries can determine the issues in controversy.  But it is claimed that this is hearsay and secondary, and it was only admitted because it was the best in degree that could be produced.  I do not so read or understand the authorities.  In the case of *The Ins. Co. v. Masley*, 8 Wallace, 397, the Court say:  " Wherever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings are original and competent evidence.  Those expressions are the natural reflexes of what it might be impossible to show by other testimony.  If there be such other testimony, this may be necessary to set the facts thus developed in their true light, and to give them their proper effect.  As independent, explanatory or corroborative evidence, it is often indispensable to the due administration of justice.  Such declarations are regarded as *verbal acts, and are as competent as any other testimony, when relevant to the issue.*"  Now after stating the law in these strong and unmistakable terms, what can that court mean by saying, " such evidence

must not be extended beyond the *necessity* upon which the rule is founded?" We are not to presume that that high tribunal spoke unadvisedly, or that it was blind to, or ignored the fact that in this country as well as in England, parties to suits are competent witnesses in their own behalf. Besides, the language of that opinion will not bear a construction consistent with appellant's theory. It is there spoken of as " original evidence." A term used by law writers in contradistinction to " hearsay," (1 Greenl., § 101) as " the natural reflexes of what it might be impossible to show by other testimony, or necessary to set the facts developed by such other testimony, if there be any, in their true light, and give them their proper effect." " Indispensable to the due administration of justice, as independent, explanatory or corroborative evidence," and that " such declarations are regarded as *verbal acts*." Could there be stronger reasons stated for the admission of any evidence? Judge Allen in his opinion in the case of *Reed v. The N. Y. Cent. R. R. Co.*, 45 N. Y., 574, in commenting on the case of *Goodwin v. Harrison*, 1 Root, 80, says: " The court placed the admission upon the ground of necessity, there being no other method of proving the fact," and then adds: " The same rule of evidence was approved, and for the same reason in *Caldwell v. Murphy*, 1 Ker., 416, and in *Wesley v. Persons*, 28 N. Y., 344."

From an examination of these cases I am unable to find where the court, in either case, rests the reason of the rule on the ground that there was no other method of proving the fact, in the sense in which Judge Allen uses that expression, unless it is to be inferred from the phrase—" from the necessity of the case," a form of expression which seems to have been frequently used by courts in a very indefinite manner, and it is not always easy to determine just what meaning they intended to convey. I certainly think we are not warranted in concluding they meant by it a necessity arising from the incompetency of the plaintiff to testify. It would seem at least, the court in the case of *Wesley v. Persons*, supra, could not have used it in that sense; for at the time that case was decided (1863) parties were, and had been for

several years, competent witnesses in their own behalf, under the statutes of New York. *La Farge v. The Exchange Fire Ins. Co.*, 22 N. Y., 352, (decided in 1860, and tried in the lower court in 1857.)

After a review of the authorities, I incline to the opinion, that all that the courts can mean by the use of the phrase under consideration, is, that necessity growing out of the inherent difficulties connected with an inquiry into, and the very nature of the proof required to show, the mental and physical condition of an individual. From the nature of the case, that condition can only be known as it finds expression in external symptoms, and in the common complaints of pain and distress, which are the natural concomitants of illness and physical injury.

But if this class of testimony is original and not hearsay, and does not fall within the rule which excludes the declaration of a party in his own favor, (and it is so held in *Cadwell v. Murphy* and *Wesley v. Persons*, supra,) then it seems clear that the reason of the rule insisted upon by counsel for appellant, is not correct. " In a prosecution for conspiring to assemble a large meeting, for the purpose of exciting terror in the community, the complaints of terror made by persons professing to be alarmed, were permitted to be proved by a witness, who heard them, without calling the persons themselves." (*Regina v. Vincent et al*, 9 C. & P., 275.)

The only authority cited by appellant in support of his position, is the case of *Reed v. N. Y. Cent. R. R. Co.*, supra, and in that case the opinion on this point was concurred in by a minority of the court.

The general doctrine is clearly laid down by both Phillips (Vol. 1, 182) and Greenleaf (Vol. 1, § 102) " that when it is material to inquire as to the bodily or mental feelings of a party, the usual expressions of such feelings, made at the time in question are in the nature of original evidence." A rule that has long been imbedded in the law of evidence, followed, not doubtingly, as Judge Allen says, but firmly; questions have doubtless frequently arisen as to its application, but seldom as to its wisdom or correctness, and I fail to see any

reason now why it should be disregarded. It is a matter of the highest importance that the law and rules of evidence should be stable, and a rule which has been so generally recognized and followed, should not be annulled by courts, unless the reason for the same is very plain and unquestionable.

III. The third point to be noticed in appellant's brief, relates to the question of trespass, as presented in the instructions, by him asked, and refused by the court.

The theory of the case, on which the instructions given by the court, rest, seem to exclude from the jury the consideration of this question, and I think properly so. The allegation in the complaint is that this excavation was deep and dangerous, and in close and dangerous proximity to the street and alley, and that the plaintiff, Anna Sanders, without fault or negligence on her part, in passing along said street, wholly unaware of danger, fell into said excavation and was injured. The court instructed that it was incumbent on plaintiffs to prove, "1st, the existence of the hole or cellar on said lot; 2d, that it was deep and dangerous; 3d, that it was so near a public street or alley as to be dangerous under ordinary circumstances to persons passing upon the street or alley, and using ordinary care to keep upon the proper path."

On the question of dangerous proximity the court instructed as follows: " Persons have an undisputed right to be upon the street or alley and upon every part of them up to the very line, and where there is nothing to define the line, they are not held to an accurate knowledge of it. And an excavation made near to a street or alley, though not dangerous to one keeping strictly in the street or alley, yet.if so near that a person deviating a little therefrom, is in danger of falling in, it is in dangerous proximity. The location of the excavation and the probable danger of persons falling therein, either during the day or in the darkness of the night, are to be considered by you in determining this question."

Now if under these instructions the jury found that the excavation was not in dangerous proximity to the street or alley, then plaintiffs could not recover; but if they found it

was, and that Anna Sanders, while using ordinary care to keep upon the public highway, fell into it and was injured, then upon this branch of the case plaintiffs were entitled to recover, regardless of the question of a technical trespass, which had it been presented as asked by appellant, could have had no other effect than to confuse or mislead the jury. Wharton lays down the doctrine, in his work on negligence, section 346, that " a trespasser, notwithstanding his trespass, may have redress for negligent injuries inflicted on him. In such case the maxim applies—*injuria non-excusat injuriam*. Even though he is liable to an action for the injury which he does, he does not necessarially forfeit his right of action for an injury which he has sustained, *ex qr.* by falling into a hole newly excavated on defendant's premises, adjoining to a public way, and rendering it unsafe to persons lawfully using the way with ordinary care."

Sherman and Redfield in their work on negligence, section 38, lay down the same doctrine: " The mere fact that the plaintiff, when he suffered the injury, was technically trespassing on the defendant's land, does not deprive him of all remedy for the defendant's negligence, if his trespass does not involve negligence on his own part, substantially contributing to his injury."

In the case of *Chapman v. Porlane*, 3 S. D., 585, Hay 29, cited in a note to above section, "the defendant was proprietor of an unfinished house, in which there was a sunk flat, beneath the level of the street. On a dark night the plaintiff, while passing, stepped aside into the doorway or entry of the building for a necessary purpose, and there being no fence or barrier across it, fell into the sunk flat, and broke her thigh bone. Held, that the defendant was liable."

In *Loomis v. Terry*, 17 Wend, 496, the plaintiff's son, while trespassing in the defendant's woods, in the day time, without any evil intention, was severely bitten by two ferocious dogs of the defendant, who was held liable for the damages. And in the case of *Sawyer v. Jackson*, 5 N. Y. Leg. Obs., 380, the defendant was held liable for an injury inflicted by his dog

upon a boy who came into defendant's premises in the day time, in pursuit of a ball.

Stress is laid upon the fact that appellant had a legal right to dig a cellar on his own premises. Certainly he had. So had the man the right to keep a dog, and make a sunk flat within the enclosure of his unfinished building, but he must take care of the one if ferocious, and guard the other if dangerous, so that harm may not come to others thereby.

I apprehend the particular character of the instruments or causes of injury is unimportant, in contemplation of law, except so far as it may affect the question of the degree of care and negligence with which they are used, kept or constructed. It would seem to me to be a strange rule of law that would permit the owner to sink deep and dangerous excavations on his uninclosed premises, near to a public highway, in a densely populated city, leave it without guard or protection, and hold him not liable in case a person, accidentally or unintentionally steps across the line, falls in, and is killed or injured, simply on the ground that the party injured was guilty of a *technical* trespass, and yet make the proprietor respond in damages who places spring guns in his *inclosed* vineyard, whereby a *willful* trespasser is shot and wounded.

If the owner may make his excavation five feet deep, why not five hundred? A fall into the one might fracture a limb; into the other would be more certain death than a discharge from the spring gun, and yet is not a man as much entitled to protection of limb as he is of life?

Under this view of the law, were the instructions given by the Court on this point correct? The rule is stated by Sherman and Redfield on Negl. § 505, that "the occupant of land is under no obligations to strangers to place guards around excavations made by him, unless such excavations are so near a public way as to be dangerous under ordinary circumstances to persons passing upon the way, and using ordinary care to keep upon the proper path, in which case he must take reasonable precautions to prevent injuries happening therefrom to such persons." And I think the doctrine well settled, both by English and American authorities, that the obstruc-

tions or nuisances need not be directly in the road. It is enough if they are so close to it as to make traveling dangerous. In the case of *Hadley v Taylor*, Law Rep., 1 C P., 53, the plaintiff, in passing along a highway at night, fell into a "hoist hole", which was within fourteen inches of the public way, and unfenced. It was held that the hole was near enough the highway to constitute a nuisance.

Pollock, C. B., in the case of *Hardcastle v. South Yorkshire Railway Co.*, 4 H. and N. 67, says: "When an excavation is made, adjoining to a public way, so that a person walking upon it, might, by making a false step, or being affected with sudden giddiness, or in the case of a horse or carriage way, might by the sudden starting of a horse, be thrown into the excavation, it is reasonable that the person making such excavation should be liable for the consequences." And he lays down this rule: "We think that the true and proper test of legal liability is, whether the excavation is substantially adjoining the way." In that case, the stone buttress, over which plaintiffs intestate walked into the reservoir and was drowned, was seven or ten yards from the public pathway, and it was held that it was not substantially adjoining. Wharton, in his work on negligence, § 885, says: "It is sufficient here to say, that while a person opening near a public highway a dangerous hole or ditch, is bound to fence it in, yet the dangerous place must be sufficiently near the public way to make it probable that persons traveling the public way might be hurt." And he cites the case of *Binks v. The South Yorkshire Railway Co.*, 3 Best and S. 244. Where the canal in which the person was drowned was twenty-one feet from the public foot path, defendant was held not liable.

The fact of the excavation being outside of the public highway was held to be immaterial, if it rendered travel on the highway unsafe. In the case of *Stack v. Portsmouth*, 52 New H., 221, the court say: "The instruction that the defendants were not liable unless the want of a railing on the street rendered the street unsuitable and unsafe for the public travel thereon, was sufficiently favorable to the defendants. * * * * The jury must find the street to be insecure, or the

defendants were not liable." And the court adds: "It is manifest that under the instructions, the jury must have found the street unsafe." The doctrine is laid down in the case of *Barnes v. Ward*, 9 C. B., 392, in almost the exact language of the instruction in this case, "that one making an excavation adjoining a public way, though it could not be dangerous to one who kept strictly in the road, is yet liable to one who deviates a little from the road and falls into the excavation."

This question was fairly left to the jury, and they must have found the excavation deep and dangerous, and in dangerous proximity to the public highway, thereby rendering it unsafe to the traveling public.

IV. Appellant excepts to the third instruction, given the jury by the court, which reads as follows:

"Defendant having been, as admitted by the answer, the owner and occupant of the lot at the time of the injuries complained of, the law presumes that whatever hole or cellar may have been dug on the lot, was dug by him, or by his direction, or remained there with his knowledge and consent."

If there is error in this instruction, it is clearly error without prejudice. The digging of the cellar by defendant is substantially admitted in the answer, and shown by the evidence, while there is no offer on the part of defendant to show that it was not dug by him or by his permission, or remained there with his knowledge and consent, and nothing in the record even tending to prove it. So I may also say of the instruction on the measure of damages, in which the court below says that plaintiffs may recover for pecuniary loss, if any proven. The record does not disclose that there was any evidence introduced even tending to prove pecuniary loss, and we are not to presume the jury found what was not in the evidence.

V. It is claimed by appellant that the court erred in instructing the jury that "negligence on the part of plaintiff is a mere matter of defense, to be proved affirmatively by the defendant, of which you must be satisfied by a preponderance of the evidence, though it may of course be inferred from the

circumstances proved by the plaintiffs. The law will not presume contributory negligence on the part of plaintiffs."

The decisions in the different states are very conflicting on this point, but so far as this court is concerned, it is effectually set at rest by the case of *Railroad Company v. Gladman*, 15 Wal., 401. In that case Mr. Justice Hunt, in delivering the unanimous opinion of the court, says: "The plaintiff may establish the negligence of the defendant, his own injury in consequence thereof, and his case is made out. If there are circumstances which convict him of concurring negligence, the defendant must prove them, and thus defeat the action. Irrespective of statute law on the subject, the burden of proof, on that point, does not rest upon the plaintiff."

After a careful examination of all the authorities, the same rule is laid down as the better law by Sherman and Redfield, § 44, and by Wharton, § 423, and I deem it unnecessary to elaborate the point further. Upon the case before us the judgment of the court below must be

AFFIRMED.

SHANNON, C. J. concurs.

BARNES, J., dissents from that portion relating to the admission of evidence of the declarations of the injured party as to the state of her health and injuries, and on all other points, concurs.