COLTON J. REED, Respondent, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

In an action to recover for personal injuries caused by the defendant's car, in which the plaintiff was a passenger, leaving the track, alleged to have occurred on account of the defective condition of such track,—*Held* (Chief Judge and PECKHAM, J., *contra*), that the admission of evidence, on behalf of the plaintiff, of the condition of the road at a point half a mile distant from the place of the accident, and evidence that new ties were subsequently put in at points in the neighborhood of the accident, was erroneous.

In such an action, where the injuries are claimed to have resulted in a permanent disability of the plaintiff to perform mental or physical labor, the defendants proved that, several months after the injury, the plaintiff had performed such labor. The evidence of the plaintiff in his own behalf that, at the time this labor was being performed, he declared to a person casually present, and with whom he had no business relation, that he then felt ill, was inadmissible, either to controvert the defendant's proof or to show statements of his own out of court consistent with his testimony. (ALLEN, J.)

*It seems* that since parties have been made by the statute competent witnesses in their own behalf, there is no longer the necessity for giving the declarations of living parties in evidence; which was formerly the reason of the rule admitting them in certain cases; and the reason of the rule

ceasing, the rule itself, adopted with reluctance and followed cautiously, should cease. (Allen, J.)

(Argued May 17th; decided May 23d, 1871.)

Appeal from the judgment of the General Term of the Supreme Court, in the fifth judicial district, affirming the judgment of the Onondaga circuit, in favor of the plaintiff, for $4,000.

The action was for injuries received by the plaintiff while a passenger over the defendant's road, alleged to have been caused by the negligence of the defendant. The car on which the plaintiff was riding was thrown from the track, between Rome and Oneida, by some displacement of the rail, and the plaintiff injured. Whether the rail was displaced by the expansion of the iron, the effect of unusual heat, or by defective ties, was among the questions controverted upon the trial, the plaintiff claiming that the ties had become rotten or defective and the defendant claiming that the road bed and ties were in good order, and the rails expanded by the heat, and each gave evidence tending to support their respective claims, and that the accident was the result of the causes alleged by them respectively.

The plaintiff claimed to have received a spinal injury, serious in its character, partially disabling him from labor, from which he had not recovered, and which was likely to be permanent. The extent of the injury was controverted by the defendant, and the evidence was conflicting upon this point.

The plaintiff was a witness upon the trial, and gave evidence of the character of the injuries to his person and of his inability to labor or endure fatigue, and that any mental or bodily exercise caused fatigue, pain and faintness. The defendant proved that several months after the injury, and after the commencement of the action, the plaintiff did perform labor requiring strength of body, and such as one with a diseased or injured spine would not be able to perform. The plaintiff was allowed, in answer to and in explanation of this evidence, and to counteract its effect, to prove his own decla-

rations to a third person at or about the same time, as to the state of his health.

The plaintiff was also allowed, in corroboration of his theory as to the defective condition of the ties and super-structure of the road at the place of the accident, to prove the condition of the road at a point half a mile distant, and that the defendant put in new ties at other places on the road, in that vicinity, after the accident. The jury gave a verdict for the plaintiff, and the exceptions taken at the trial were ordered to be heard in the first instance at the General Term. The Supreme Court at the General Term overruled the exceptions and ordered judgment upon the verdict. From that judgment the defendant has appealed to this court.

*D. Pratt*, for the appellant. On the question of the plaintiff's declarations to a third party, *Wesley* v. *Person* (28 N. Y., 344); *Baker* v. *Griffin* (10 Bos., 140); *Caldwell* v. *Murphy* (11 N. Y., 416); *Thompson and wife* v. *Freeman Skinner* (8 Watts, 857).

*G. N. Kennedy*, for the respondent.

ALLEN, J. The plaintiff received the injury complained of in June, 1865. The claim was that the spinal column was affected, and that the plaintiff was disabled in a great degree from labor or bodily exercise. As a witness, he testified that he had not, at the time of the trial, September, 1866, recovered from the effect of the injuries; that he had not been able to labor except for a short time, or to do any effective labor; that riding in the cars affected him, causing pain in the back, as also did sitting in a chair at the trial; that mental labor produced similar effects, and that labor for a short time exhausted him and caused severe pain. The defendant proved by other witnesses that in the fall and winter after the injury the plaintiff did perform certain labor requiring health and strength of body, such as able-bodied men usually perform, and the evidence tended to prove that at the time

referred to, he was in perfect health, and that his strength was unimpaired. Under objection and exception by the defendant, the plaintiff was allowed to prove that, at the same time, he complained to a person whom he casually met, or who was casually present, of not feeling well. The physical condition of the plaintiff up to the time of the trial was a material inquiry, as it bore directly upon the question of damages and the amount of the recovery, and whether in the fall and winter following the injury the plaintiff was in the enjoyment of full health and strength of body, was a material fact in issue. The plaintiff was permitted to prove his own declaration to the fact that at that time his health and strength were impaired. The evidence was permitted to go to the jury as competent evidence, and we cannot say that it did not influence the result. It could be influential in one of two ways: either as proving, or tending to prove, the fact as alleged, or as corroborating the testimony of the plaintiff, by showing that his declarations out of court were consistent with his statements on the witnesses' stand, and it may have had its effect with the jury in both ways. It is not competent in corroboration of a witness or confirmation of his evidence, to prove that on other occasions he has made statements consistent with his testimony. (*Robb* v. *Hackley*, 23 W. R., 50.) If there are exceptions to the rule, they are very limited in number and special in their character, and this case does not fall within them. They are referred to by Bronson, J., in the case cited. It is suggested that as a part of the *res gestæ*, the declarations were admissible for what they were worth. They were nearly, and possibly quite simultaneous with the acts proved by the defendant, but they were not made in reference to these acts or in explanation of them, and did not tend to qualify them or detract from their force as evidence. They were made to a person casually present or meeting the plaintiff. The party to whom the declarations were made had no business relation with the plaintiff connected with the acts proved, and coincidence in point of time

is the only connection between the declarations and those acts. They were in no sense a part of the *res gestœ*.

Declarations are sometimes admissible in evidence as part of the transaction, when they qualify or give character to it. These declarations did neither. The fact of ill-health and impaired bodily strength was the material fact, and that could not be proved by the unsworn statement of the plaintiff. Hearsay evidence, as a rule, is excluded, and the declarations and statements of the parties, or of third persons, are not received except under peculiar circumstances, and as a necessity. Statements made out of court, and without the sanction of an oath, are dangerous as evidence, and the rights of suitors ought not to be put in peril by them. The instances are few in which declarations and unsworn statements made out of court have been permitted to be given in evidence as proof of the facts sought to be established. Statements and representations of a sick person, of the nature, symptoms and effects of his malady, have been received as original evidence, and especially when made to a medical attendant, to enable him to minister to the patient, they have been regarded as competent evidence, and entitled to weight. (1 Greenl. Ev., § 102.) There is good reason for their admission when made to the attending physician or surgeon, as upon them, in connection with the manifestations and symptoms of injury or disease the opinion of the expert is based and the treatment governed. But in every other case the admission of testimony so exceptional, as a departure from the established rules of evidence must be referred to the necessities of the case, and the inability of the party to give evidence of a higher and more satisfactory nature. The general rule is that the best evidence of which the fact is susceptible must be adduced, and secondary or inferior evidence will not be received, so long as the higher and better evidence can be had. The plaintiff was a competent witness to prove the state of his health at the time he handled the bags of clover seed and performed the other labor mentioned, and it was not necessary to resort to other and inferior evidence;

and so long as his sworn statements were admissible, his unsworn declarations should not have been received. *Aveson* v. *Lord Kinnaird* (6 East, 188) was an action upon a policy of insurance upon the life of the plaintiff's wife, and the declaration of the wife made soon after the making of the policy, when lying in bed apparently ill, stating the condition of her health at the period of her going to Manchester for examination by a surgeon, preparatory to the insurance, was held admissible because the fact was material, and that was " the best evidence which the nature of the case afforded ;" and in addition to this, the plaintiff having proved the declarations of the wife to the examining surgeon, the subsequent statements by her were regarded as in the nature of a cross-examination by the plaintiff's own witness, within the principle of *Wright* v. *Littler* (3 Burr., 1255), where the statements of a deceased subscribing witness to a bond were allowed to be given in evidence to impeach the bond. From the necessity of the case, the statements of parties who could not be examined as witnesses in their own behalf as to bodily suffering and pain and personal injuries, when made soon after an alleged injury, or made while apparently ill to a physician or nurse, or other person, have been received in evidence and permitted to go to the jury for what they were worth. *Goodwin* v. *Harrison* (1 Root, 80) is an early case, and there in an action by a young lady for a bodily injury, she was allowed to prove the complaints made to her mother the morning after the injury. The court placed the admission upon the ground of necessity, there being no other method of proving the facts. The same rule of evidence was approved, and for the same reason, in *Caldwell* v. *Murphy* (1 Ker., 416), and in *Wesley* v. *Persons* (28 N. Y., 344) ; and see 1 Phil. Ev., by C. & H., 232. But by the amendment of the Code in 1869 (§ 398), there is no longer a necessity for giving in evidence the declarations of a party, if he is living and able to be sworn and examined as a witness, and the reason of the rule ceasing, the rule itself, adopted with reluctance and followed doubtingly and cautiously, should cease. The admission of this

evidence was erroneous, and entitles the defendant to a new trial. There was other evidence admitted that should have been excluded, if it was covered by the objection of the defendant. ·The fact that new ties were put on the road after the accident, and especially the next summer, in the vicinity, did not tend to prove that the road was out of repair and dangerous, at the time of the injury to the plaintiff. If the evidence tended, legitimately, to prove the imperfect and dangerous condition of the defendants' road, and was competent, the defendants should have been permitted to explain the act by their superintendent, and show that it did not necessarily prove, or tend to prove that the road was in an unsafe condition; that the taking out of old ties and substituting new, was a continual process for the preservation and keeping up the road, and prevent its becoming imperfect and out of repair, a preventive and precautionary rather than a restorative measure.

The judgment must be reversed and a new trial granted, costs to abide the event.

Grover, J., concurred in the opinion; Folger, J., concurs in the result, on ground of error in the admission of evidence, as to the condition of the road at a distance from the accident, and to the laying of new ties along the road subsequently; Rapallo, J., concurred in the result on the same ground. He agreed also with the opinion as to the other question discussed; Chief Judge and Peckham, J., dissent; Andrews, J., did not vote.

Judgment reversed and new trial granted.