Brady, J.
The plaintiff who is a married woman was injured while a passenger on the defendants road, and the jury properly instructed, found that her injuries resulted from the carelessness of the defendant’s driver, and awarded her damages. The defendants sought to relieve themselves from responsibility by proving that the accident was caused by a wagon or truck, which was backed down upon their track and under circumstance which could neither be anticipated, nor their result avoided. The defendants’ car -was as they allege arrested in its progress by other vehicles, and had stopped until an opening presenting itself and giving abundance of room to proceed, it was set in motion. This had hardly occurred however when a wagon or truck which had been an obstacle to its progress and which had moved out of the way, backed very unexpectedly on the track and caused the collision by which the plaintiff was injured. It was not questioned on the trial, that if the plaintiff’s injuries were occasioned by the carelessness of the driver of the wagon or truck, the plaintiff could not recover, but whether such were the fact or not, was a question clearly submitted to the jury on conflicting evidence, and under proper instructions on the subject The defendants complain of many errors, which were urged on the argument, as reasons why there should be a new trial, and by which they insist injustice was done them. Some of these are of sufficient import to demand particular attention. The plaintiff was permitted to show how much she could earn as a dressmaker against the defendants’ objection which was predicated on the case of Filer v. The N. Y. C. R. R. Co., 49 N. Y., 56. The plaintiff however met the de mands of that adjudication by stating that her business was that of a dressmaker, and that she had a fancy store for dry goods and fancy goods and wrappers, and she had alleged in her complaint that she was prevented from attending to her business. This was sufficient to authorize her to give evidence of and to establish her right to damages for such losses. The case referred to does not question the right of a woman to recover for damages arising from a loss of business. It is only when she does not carry on business on her own account, that she cannot recover for them, inasmuch as her husband is then entitled to her services and may maintain an action for the loss of them.
During the cross-examination of the plaintiff, she was asked whether a Dr. Messener who had visited her in her illness had been subpoenaed as a witness on her behalf and answered “ No, sir! he told me he would not go.” On .the re-direct examination she was asked whether the doctor told her why he would not come and what he said. She *397 was allowed to answer against the objection of the defendants’ counsel. Her answer is as follows:
A. He says: “Mrs. Uransky, I have all my friends from the company, and the conductors and the drivers; if I should go against the company, then they will throw out all those people they put on the road for me, and then every one will starve if I should go for you, and I could not do that for you.” He could not go against the company.
The doctor was not shown to be in any way connected with the defendants, and what he said would not have heen competent, unless made so by the cross-examination. This seems to have been the conclusion here, for the question was asked, as we have seen, whether the doctor had been subpoened, and presumably if he had not, for the reason that he could not benefit the plaintiff and might injure her case. This was an argument that might be employed, and ingeniously, and therefore the right to show why he would not come seemed to have arisen as the result,of the cross-examination. The effect of unfortunate questions is often damaging, and this is another to be added to the long fist which already exists.
On the fourth day after the accident the plaintiff, who had been continuously ill, was visited by an acquaintance who was a nurse, though not a professional, and she was permitted to state that the plaintiff complained of a pain in her back and body, thus corroborating the statement of plaintiff that she had such pains, and this is complained of, not because it might not be proper, if the statement had been made at the time the injuries were received, but because too long á time had elapsed since that occurrence. The case of Hagenlocker v. Coney Island R. R. Co. (99 N. Y., 136) contains the latter expression on the propriety of such evidence, but does not favor the proposition that pains felt a few days after an injury, and which were intermittent, if not continuous, from the time of the injury, were not to be considered by the jury in estimating the damages to be given in compensation. It is too late now to question the right of an injured person to indemnity for suffering caused by the injury, even down to the time of the trial. Whether, however, the pains are the result of it, or feigned, as suggested in the case just cited, is for the jury to determine. The plaintiff averred that she was enciente at the time of the accident and that it caused a miscarriage. This was an important feature in the case, and attracted much attention. One of the physicians called on her behalf, said that he had heard- her testimony and that of a boy called on her behalf, and he was then asked : “ Assuming that as true, would you say that the miscarriage of which the plaintiff has testified was the result of *398 the collision?” and he answered, “I would, decidedly.” The question was objected to as incompetent, and exception taken. It was clearly competent to show that the miscarriage asserted was the result of the injuries received, and the objection was not properly taken therefore.
The form of the question might be subject to criticism, although, it was good in substance. The proposition urged in favor of the exception is that when the facts are controverted, or are not entirely clear, a hypothetical question may be put, based upon the facts claimed to be proved, and this is founded upon the case of Guiterman v. The Liverpool S. S. Co., 83 N. Y., 365. In that case the witness was asked for an opinion under the circumstances detailed, involving complications and the consideration of testimony of witnesses, and a marine protest he had heard read, and the court said that in order properly to form an opinion, the witness should have full information as to the ascertained or supposed state of facts upon which his opinion is based, and he could not be called upon to determine the truth of the facts sworn to before giving his opinion. Here, however, the witness was asked to express an opinion, assuming what he had heard to be true, which was equivalent to a hypothetical question setting out the facts sworn to in detail. And this was justified by authority. Matteson v. N. Y. Central R. R. Co., 35 N. Y., 493. And it must be said also, that there was on the part of the plaintiff a clear statement of the facts on which the witness was asked to testify. No testimony had indeed at that time been given on behalf of the defendants. There are no other exceptions prior to the charge which require especial mention. They have been examined, but are considered to be valueless.
The requests to charge seem also to have been properly disposed of. The defendant’s counsel, zealous, watchful, untiring, planted almost with each step an objection and exception, and the record is replete with them; but it is much easier to take than to sustain them. For example, he requested the court to charge as follows :
“ Fifth. If the wagon with which the defendant’s car collided had, prior to the collision, passed the defendant’s track, leaving room for the defendant’s car to proceed, and the collision was caused by a backward movement on the part of the wagon, which, under the circumstances, could not be anticipated by the driver of the car, then there was no negligence on the part of the car driver, and the defendant is entitled to a verdict."
And excepted to the refusal. The learned justice had charged almost in the language of the request, but added the words “or avoided,” thus properly placing liability upon the defendants, if the driver, notwithstanding that he *399 could not have anticipated the backward movement, if he could have avoided it.
The court was also asked to charge as follows:
“ Tenth. 'If the jury believe that the miscarriage, of which the plaintiff complains, was neither the necessary or natural result of any injuries sustained by the plaintiff while a passenger in the defendant’s car, but occurred from some other cause or causes, then the jury must discard fjfcn their minds all evidence respecting the miscarriage, and confine their attention to the necessary and natural results of whatever injury the plaintiff did, in fact, receive on the occasion in question.”
This was as a whole objectionable. What is meant by the necessary and natural results of whatever injury the plaintiff did in fact receive on the occasion of the accident? It is difficult to understand this. If the jurors were scientists or experts familiar with the structure of the human frame, the casualties to which it is subjected, and the natural and necessary effect, therefore, of injuries such as the plaintiff received, the question might be tolerated; but the court was dealing with less scientific questions' and called upon to pronounce intelligently a rule of damages, and had done so. The learned justice had said all that the defendants could well demand from him and what he said is an answer to the impropriety of the request made. It was as follows:
“ If you find there was negligence, then it is your duty to ascertain what are the damages that this plaintiff has sustained. You may take into consideration the physical injury, the anguish and bodily pain she suffered, the expense of being treated for the injury, and all damages necessarily resulting from the injury, such as you can see were tlv: necessary consequences and result of this injury. It is not a case, however, which authorizes anything hut actual damages. It is not a case which authorizes you to inflict upon the defendants what is called exemplary damages. You are under the same duty to look at the question of damages as you are to consider the question of negligence. Ho good is ever accomplished by awarding excessive damages, no good is ever accomplished by doing that which the evidence does not justify. You have a duty in that regard, and your duty is to ascertain whether this lady has suffered this injury, and if the injury was the result of negligence to ascertain what damages she has sustained as the result of this injury.
“ These parties have been careful to bring witnesses before you to testify to this subject to lay it before you. It is not a speculative inquiry, there must be no guesswork about it, it must be actual; matters upon which you can put your finger, matters of which your mind will approve after you have rendered your verdict.”
Whether the results injurious to the plaintiffs were necessary or unnecessary, whether natural or unnatural, she was entitled to indemnity. For pain and suffering or injuries to the feelings, there can be no measure of compensation, save the arbitrary judgment of a jury. It is a rule of necessity. Leeds v. Metropolitan Gas Light Co., 90 N Y., 29. No possible utility can spring from the use of complex or metaphysical requests, to charge except in cases which from *400 their nature demand them. A plain straightforward expression of thought is a much greater factor and more likely to succeed than any other form. The courts then understand what they are called upon to do and decide the question presented with ease and certainty. In the" defense of cases kindred to this, it should be said perhaps, that-there seems to be a constant apprehension on the part of the defendant’s counsel that injustice will be done to his clients by the jury whose sympathies will mislead them, and they, therefore, hedge themselves in, and doubtless properly, by every device to which they may resort. This apprehension is not, however, warranted, for juries are rarely carried away by undue influence in civil cases, and are generally right in their conclusions. The judgment for these reasons should be affirmed with costs.
Daniels, J.
During the trial of this action, which was for a personal injury, the witness, Mary A. Fielder, was allowed to relate a conversation had with the plaintiff on the 26th of April, 1885, four days after the occurrence of the accident. By the evidence proposed to be given it was intended to prove complaints which the plaintiff made to this witness, who was not a physician, and which were not made to secure medical or surgical assistance concerning her injury and sufferings. This was objected to as incompetent. The objection was overruled and the defendant’s counsel excepted". And under this ruling the witness testified in answer to questions propounded to her as follows :
Q, Did she complain to you at that time of any pain?
A. Yes, sir.
Q. State what she said? • .
A. She said that she was in pain — was hurt and cut. She said she had a terrible pain on the right side of the lower part of her stomach.
Q. State what she said about pains?
A In her back she was in terrible pain; and her head.
Under the rule of evidence, as it was formerly held and applied,- this testimony could have been legally received upon the trial, for this rule permitted complaints of pain and suffering to be proved in behalf of the plaintiff’s case, although they may have been made in the course of conversations with a person not applied to for either medical or surgical assistance. 1 Ghreenl. on Ev. (7th ed.), § 102; Cadwell v. Murphy, 1 Kern., 416; Matteson v. New York Central, etc, 35 N. Y., 487; Insurance Co. v. Mosley, 8 Wall., 397.
But in the case of Reed v. New York Central, etc. (45 N. Y., 574), it was held by Judge Allen, who delivered the opinion of the court,. that statements and declarations of this description were no longer entitled to be received in *401 evidence, when not made to a physician or surgeon, because of the competency of the party injured to take the stand and testify as a witness concerning the facts. But this opinion, as broadly as it was written, was concurred in only by Judges Grover and Raparlo. Judge Folger agreed to the result, and the two other judges in the court dissented. While this decision, therefore, indicates a strong disposition to abrogate this preceding rule of evidence, it is not entitled to be attended with this effect, for a majority of the court were unwilling to consent to this result. The case of Hagenlocher v. Coney Island, etc., R. R. Co. (99 N. Y., 136) does not include, or consider, this precise point, and for that reason it is not an authority on this subject. Under the rules stated and followed in Waldde v. New York Central, etc. (95 N. Y., 274), this evidence was no part of the res gestee, and it was not entitled to be received under that authority, or the case of Mitchell v. New York Central (25 Hun, 561).
The safe course in view, of what was said in the case of Reed v. New York Central, would be to reject all such evidence, but as the preceding rule relating to it cannot yet be said to have been overthrown by the opinion there announced, and concurred in by two of the other judges of the court, and it has the support of other cases decided in the same court since the provision went into effect allowing the party to be sworn as a witness in his or her own behalf, it should not now be held to have been error for the court to receive this testimony on this occasion. This is all that it is considered necessary to add to the opinion of Mr. Justice Brady, and the judgment in the action, as well as the order denying a new trial, should be affirmed.