## McGuire *v.* Ogdensburgh & L. C. R. Co.

### (*Supreme Court, General Term, Third Department.* March 15, 1892.)

1. RAILROAD COMPANIES—INJURIES TO STOCK—EVIDENCE.

   Testimony of a witness that he found a railroad fence broken down, the top board lying on the ground, the third board nailed at one end, the other resting on the ground, several horses from the adjacent pasture on the track, and tracks leading out of the pasture through the opening, was sufficient to justify a submission to the jury of the question whether plaintiff's horse, which was killed, escaped through defendant's fence to the track.

2. SAME—SUFFICIENCY OF FENCE—NOTICE OF DEFECTS.

   Evidence that the part of the fence where the tracks indicated that the horses went through was in bad condition, the boards and posts shaky and weak, some of the boards not long enough to reach the posts and some too rotten to be nailed, some loose and flapping, and some broken off, was sufficient to justify a finding that the fence was in a bad condition some time before the accident, thereby charging defendant with notice of its insufficiency.

3. SAME—EVIDENCE.

   Evidence that the fence was defective in the immediate vicinity of the spot where the horses went through was properly received, on the question of constructive notice to defendant of the general insufficiency of the fence.

4. SAME—INSTRUCTIONS.

   The court properly refused to charge that if defendant's employe made an examination of the fence the day before the accident, and discovered no defect at the place of the accident, defendant was not liable; the jury being under no obligation to believe such employe, nor to accept his judgment as to the sufficiency of the fence.

Appeal from circuit court, St. Lawrence county.

Action by Albert E. McGuire against the Ogdensburgh & Lake Champlain Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before PUTNAM and HERRICK, JJ.

*Louis Hasbrouck*, for appellant. *Thomas Spratt*, for respondent.

PUTNAM, J. This action is brought to recover the value of a horse which escaped onto defendant's railroad track through a defective railroad fence, and was killed by an engine. I think there was sufficient evidence to submit the question to the jury whether or not the horse in question escaped through the south fence to the railroad track. Joseph Gasco, Jr., who was first upon the ground, and whose statement the jury could and probably did believe, found the south fence broken down. The top board was lying on the ground, and the third board was nailed at one end, the other resting on the ground. Several horses not killed were upon the track, and these he drove through the broken fence and nailed it up with a stone. He then discovered tracks leading from the pasture to this opening, and apparently through it. There was other evidence in the case tending to corroborate him. It is true that on the part of the defendant testimony was offered tending to show that the horses escaped through the fence at the sand pit, and from thence to the branch track. But the testimony given in this regard was conflicting, and of such a character that the question as to what point the horses escaped from the pasture was properly submitted to the jury, and the finding of the jury cannot properly be disturbed. *Payne* v. *Railroad Co.*, 83 N. Y. 574. The plaintiff's witnesses also gave evidence tending to show that part of the fence where the tracks indicated the horses went through onto the railroad track was in bad condition; the boards and posts rotten, shaky, and weak; some of the boards not long enough to reach the posts and some too rotten to be nailed; some of the boards were hanging loose and flapping. In addition to this testimony, Joseph Gasco, Jr., shows that immediately after the accident he found the two boards off, as before stated. This evidence justified a finding by the jury that the fence was in bad condition some time before the accident. It is true, as claimed by appellant, that the plaintiff, to establish a case of negligence on the part of the defendant, must show notice, actual or constructive, to it of the condition of the fence. But where a fence has been out of repair for a considerable period a railroad company will be presumed to have had notice through its agent of said defective condition; will be chargeable with constructive notice. *Hodge* v. *Railroad Co.*, 27 Hun, 395; *Hungerford* v. *Railroad Co.*, 46 Hun, 340. In this case, if the jury believed the evidence given by plaintiff's witnesses they could find that this fence was an old, rotten, weak, and insufficient fence, and one that should have been repaired, and that defendant could properly be held chargeable with constructive notice of its condition. The distinction between this case and that of *Wheeler* v. *Railroad Co.*, 2 Thomp. & C. 636, cited by the defendant, is plain. In that case, as stated in the opinion of the court, there was absolutely no evidence showing the bad condition of the fence, even up to the day or the hour before the accident. In *Murray* v. *Railroad Co.*, *43 N. Y. 278, the gate was only out of repair four days, and under such circumstances that the attention of the defendant was not called to it. In this case, if plaintiff's evidence is true as to the fence, it must have been out of repair for a considerable period. It was old and rotten, the boards flapping and short. It must necessarily have been in that condition for such a period as to charge defendant with constructive notice. This bad condition was shown on the very spot where Gasco found the fence broken down. It is true that defendant's employes testified that they from time to time examined the fence in question, and had found no defect in it. But the jury, under the circumstances, were not bound to believe the defendant's witnesses in this regard. **They**

could, and doubtless did, rely upon the testimony given by the witnesses produced by the plaintiff. The court allowed evidence of the condition of the fence at the very spot where Gasco found the tracks indicating that the horse had gone through, and also in the immediate vicinity of the place. The appellant insists that it was error to allow such evidence except at the very place where the horse escaped. It is difficult to see how the admission of the evidence as objected to and received by the court below could have injured defendant. But I think such evidence was properly received on the question of constructive notice to the defendant. It was a question of fact, under all the evidence and circumstances, whether defendant was negligent; whether defendant's employes should have discovered the condition of the fence. It was therefore proper to show the condition of such fence for a sufficient space, including where the horse went through, and on each side of that spot, so that the attention of the servants of the defendant should have been attracted. Suppose the defective spot in the fence had been only for the small space where the horse came through, the jury might have concluded that the servants of the defendant were not negligent in not observing so insignificant a defect in the fence. If, however, the defective spot was for several lengths of the fence, including the place where the horse came through, that was a defect that should have attracted notice. I think, on the question of fact submitted to the jury as to whether defendant was or was not negligent in not discovering the defective fence, the evidence so received was competent. The cases cited by defendant are not similar. In *Reed* v. *Railroad Co.*, 45 N. Y. 574, the court held that the condition of the railroad a half mile from the place of accident could not be shown. That is a very different case from this, where the condition of the fence was only shown in the immediate vicinity of the place where the horse escaped. The other authorities cited by the defendant (Abb. **Tr.** Ev. p. 585, § 9; *Calligan* v. *Railroad Co.*, 59 N. Y. 651) are not applicable. I do not think the court erred in refusing to charge as requested by the defendant, that if defendant's employe, Connor, made an examination of the fence the day before the accident, and discovered no defect and no boards down at the place where the horse escaped, the defendant is not liable; that if Connor made such an examination as in his judgment seemed proper under the circumstances the defendant is not liable. The jury were not bound to believe Connor. They had a right to believe the testimony of the other witnesses, and from such testimony to infer that the fence in question was an old, rotten, weak, and defective one, and if they so found, they could determine from Connor's examination of the fence the day prior to the accident that the defendant had express notice of its defective condition. If it was in fact, as witnesses testified, a poor fence, and the jury so determined, although Connor so examined it the day before the accident, his defective judgment in calling or considering it a good fence would not conclude the jury or shield the defendant from liability. The judgment should be affirmed, with costs.